UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RODNEY C. MOORE,

             Plaintiff,

v.                                                    Case No. 17-cv-122-pp

DAN CROMWELL, *et al.*,

             Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR DEPOSITIONS AND ORDER FOR MEDICAL TREATMENT (DKT. NO. 67), DENYING MOTION FOR PRELIMINARY INJUNCTION/TEMPORARY RESTRAINING ORDER (DKT. NO. 68), DENYING MOTIONS RELATED TO HIS MOTION FOR PRELIMINARY INJUNCTION/TEMPORARY RESTRAINING ORDER (DKT. NOS. 69, 70, 79) DENYING MOTION FOR DEFAULT JUDGMENT (DKT. NO. 71) AND DENYING MOTION FOR SANCTIONS, DEFAULT JUDGMENT AND HEARING (DKT. NO. 81)**

---

Plaintiff Rodney C. Moore, who is representing himself, filed a motion for preliminary injunction/temporary restraining order, dkt. no. 68, and three subsequent motions related to that motion for injunctive relief, dkt. nos. 69, 70, 79. The plaintiff also has asked the court to order the state to help him set up witness depositions, and to help him get a second opinion regarding the trouble he is having with his eyes. Dkt. No. 67. He has asked the court to grant default judgment in his favor because he alleges that the defendants have committed discovery violations. Dkt. No. 71. Finally, he has filed a motion for default judgment, sanctions and a hearing. Dkt. No. 81. The court will deny these motions.

## I. Motion for Preliminary Injunction/Temporary Restraining Order (Dkt. No. 68)

The plaintiff alleges that the defendants unfairly gave him conduct reports in retaliation for his lawsuit against them; improperly refused to move him back to "Dorm A"; and are intentionally exposing him to harmful "emergency lights." Dkt. No. 68 at 1, 3-4. He has asked the court to require the defendants to move him back to "Dorm A," away from the defendants, and to prohibit the defendants from using the emergency lights. Id. at 8.

The plaintiff says that since the court's ruling on his previous motion for preliminary injunction/temporary restraining order (dkt. no. 62), the defendants have given him three conduct reports for minor offenses. Dkt. No. 68 at 1. He also alleges that Sgt. Rozmarynoski, who the court dismissed from this case on June 13, 2018, assaulted him. He also alleges that on February 7, 2018, the defendants moved him from his single cell and placed him in "Dorm A" with 115 "cellies." Id. at 2.

The plaintiff says that once he was in "Dorm A," things started out fine. But the plaintiff says that in April, after the plaintiff's run-in with Rozmarynoski, defendant John Lannoye spoke with Sgt. Kent, who apparently is in charge of "Dorm A." Id. The plaintiff alleges that after this meeting, the defendants turned on the "emergency lights" in "Dorm A" for longer periods of time Id. at 2. The plaintiff states that this caused him headaches and made him feel sick. Id. Then, in June 2018, after the plaintiff received two conduct tickets, the defendants moved the plaintiff from "Dorm A" to another, un-named, cell block where the "emergency lights" were brighter and on daily from

2

6:00 AM to 10:00 PM. Id. at 2-3. Again, the plaintiff states that this caused headaches. Id. at 3.

The plaintiff discusses at length how the defendants are using the emergency lights to retaliate against him, going into great detail about the conduct tickets he received. Id. at 3-4. He also makes some vague references to other instances of excessive force. Id. at 5. He spends several pages of the motion discussing how the defendant's use of emergency lights violates institution policy, and his efforts to seek assistance from the Village of Allouez building inspector. Id. at 4-8. The plaintiff asks that the court order the defendants to stop using the "emergency lights" in violation of policy and place him back in "Dorm A" as a remedy.

As the court stated in its ruling on the plaintiff's previous motion for preliminary injunction/temporary restraining order, a preliminary injunction or temporary restraining order is "an extraordinary remedy" that a court may grant only after a "clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, 555 U.S. 7. 22 (2008). To make such a showing, the plaintiff must show that 1) his underlying case has some likelihood of success on the merits; 2) no adequate remedy at law exists; and 3) he will suffer irreparable harm without the injunction. Wood v. Buss, 496 F.3d 620, 622 (7th Cir. 2007). If the plaintiff makes that showing, then the court must balance the harm to each party and to the public interest caused by granting or denying the injunction. Id. See also Korte v. Sebelius, 735 F.3d 654 (7th Cir. 2013); Cooper v. Salazar, 196 F.3d 809 813 (7th Cir. 1999). As the

court also explained in its previous ruling, injunctive relief is appropriate only if it seeks relief from actions similar to the plaintiff's claims in the underlying case. See Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994); Neuroscience, Inc. v. Forrest, No. 12-cv-813, 2013 WL 6331348 at *1 (W.D. Wis. Dec 5, 2013).

Many of the allegations in this motion concern allegations of retaliation or excessive force that happened *after* the plaintiff filed his lawsuit (in fact, he says they happened *because* he filed his lawsuit). These claims do not relate to the underlying case, in which the plaintiff has claimed that the defendants violated the Eighth Amendment by exposing him to the emergency lights, creating unlivable conditions of confinement. As the court explained in its prior order, if the plaintiff wants the court to address the issue of individuals retaliating against him, or subjecting him to excessive force, he needs to file a separate complaint. See Dkt. No. 62 at 3.

Admittedly, some of the facts the plaintiff alleged in the motion relate to his underlying claim. He says that the continued exposure to the emergency lights is causing him headaches and to feel sick. The plaintiff has not, however, alleged sufficient facts to justify then court granting him injunctive relief. "A condition of an inmate's confinement such as constant illumination violates the Eighth Amendment if it denies the inmate 'the civilized measure of life's necessities,' and is the result of deliberate indifference by prison officials." King v. Frank, 371 F. Supp. 2d 977, 984 (W.D. Wis. 2005) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Such a denial needs to be "'extreme';

4

mere discomfort is not sufficient." Mathews v. Raemisch, 10-v-742, 2012 WL 12888031 at *8 (Feb. 23, 2012) (quoting Hudson v. McMillian, 503 U.S. 1, 8-9 (1992)).

The plaintiff has not alleged that his exposure to the emergency lights causes an extreme denial of the civilized measure of life's necessities. He does not allege that he is exposed to the lights twenty-four hours a day; he states that the lights are typically shut off at 10:00 PM. While the plaintiff alleges that the lights give him headaches and unspecified feelings of illness, he does not allege that he is being severely or permanently damaged by them. The very basis of his lawsuit is his allegations that exposure to the lights violates his Eighth Amendment rights, but the court has not yet been able to determine whether he has a likelihood of success on the merits of that claim, because the deadline for completing discovery has not passed.

Even if the plaintiff had alleged sufficient facts to show a reasonable likelihood of success on the merits of his underlying case, the court then would need to balance the defendants' interests—in using the lights and in deciding where to house inmates—against the plaintiff's claimed injuries. In their response to the motion, the defendants explain that they use the "wall lights" (as they call them) "when natural lighting in the cell hall is insufficient to ensure inmate and staff safety and security while performing their regular duties on unit." Dkt. No. 72 at 8. The defendants also explain that the defendant's current dorm assignment is based on his disciplinary history and his job assignment. Id. at 7. The plaintiff has not alleged any facts that

5

outweigh the defendants' stated safety reasons other than his allegation that he has headaches and feels ill.

The court understands, and has understood since the plaintiff filed his lawsuit over a year ago, that he strongly believes that the lights are causing him to suffer. He wants the court to tell the defendants to stop using the lights, or to move him somewhere where he's not exposed to the lights. It may be, after the court has seen the parties' summary judgment briefing, that the court might agree with the plaintiff. But it is too soon for the court to make that determination, and the plaintiff cannot get around the procedures required in every lawsuit by filing different kinds of motions, asking the court to give him by means of a "short cut" in litigation the very thing he asks for as relief in his complaint. The court will deny the motion.

**II.   Motions Related to Motion for Preliminary Injunction/Temporary Restraining Order (Dkt. Nos. 69, 70, 79)**

Within days of receiving the plaintiff's motion for a preliminary injunction and temporary restraining order, the court received from the plaintiff a supplement to that motion (dkt. no. 69), a motion asking the court to schedule a hearing on that motion (dkt. no. 70), and "Another Motion for Order Enforcing Motion Filed Document 68 T.R.O." (dkt. no. 79).

The motion entitled "Retaliation is Being Done, Supplement for Preliminary Injunction and Temporary Restraining Order and Motion for Default Judgment" is a supplement to the motion for injunctive relief which the court denied above. Dkt. No. 69. It isn't a supplement, though—it's just another statement of the same things the plaintiff said in the motion for

preliminary relief. The plaintiff wants the lights turned off ("unless it is an emergency," he wants the "petty tickets to stop," he wants the staff to stop telling people they'll give tickets for using shades, and he wants to go back to a different dorm. Id. The court will deny this motion for the same reasons it denied the motion for injunctive relief.

As for the plaintiff's "Motion for Order," dkt. no. 70, it informs the court that the lights are still on, and asks the court to grant a hearing. The plaintiff says he has a witness. Id. As the court noted in its screening order (dkt. no. 41 at 7), the court will assume that the lights will remain on until the plaintiff informs the court that the lights are no longer in use. The plaintiff does not need to keep filing updates on his situation. The court will not grant the plaintiff a hearing. The court believes him that the lights are on. The question of whether having the lights on violates the plaintiff's constitutional rights will be addressed either by the court at summary judgment, or by a jury if his claims survive summary judgment. The court will deny this motion.

The court received the last motion, titled "Another Motion for Order Enforcing Motion Filed Document 68 T.R.O.," about a month and a half after it received the motion for injunctive relief. Dkt. No. 79. This motion is a reminder to the court about the earlier motion, and the court will deny it.

The court realizes that the plaintiff wants the court to tell the defendants—right now, right this minute—to turn off the lights, or to move him to another cell or to let him use a shade without getting a conduct ticket. The court is not going to do that based on a motion. It will not speed things up for

the plaintiff to continue asking the court to do what it will not do until it has had a chance to consider evidence and arguments from *both sides* in the regular course of litigation—either through summary judgment motions or through a trial. The court will deny this motion.

**III.    Motions for Discovery/Default Judgment/Sanctions (Dkt. Nos. 67, 71, 81)**

Finally, the plaintiff has filed three motions having to do with discovery, and his views that the defendants are not complying with the rules regarding discovery. The court begins by noting that the deadline for the parties to complete discovery does not expire until January 18, 2019—the parties still have time to comply with each other's requests.

In the first motion, the plaintiff says that he's filed the motion to "plead with the defendants' attorney to set up the oral dispositions with the party's [he] requested." Dkt. No. 67 at 1. The court already has ruled on, and denied, one motion from the plaintiff regarding depositions. Dkt. No. 83. In this motion, the plaintiff does not explain whether he has complied with Fed. R. Civ. P. 30, the rule that governs how to request a deposition. A party who wants to depose one of the other side's witnesses must serve a notice of deposition containing the time and place for the deposition. Rule 30(b)(1). The person asking for the deposition must arrange for the deposition to be taken before "an officer appointed or designated under Rule 28"—usually a court reporter whom the deposing party hires and pays. Rule 30(b)(5). It is not the job of the defendants' attorney to make these arrangements—if the *plaintiff* wants to depose the defendants' witnesses, the *plaintiff* must make these arrangements. Most

incarcerated plaintiffs can't hire and pay for a court reporter or set up a deposition. That is why they use other tools to get the information they want. They send the defendants' lawyers interrogatories (written questions) under Rule 33. They ask the defendants to admit or deny certain facts (requests for admission) under Rule 36. They ask the defendants for certain documents (including statements witnesses may have made in the past) under Rule 34. The plaintiff can do all of these things—he's been able to do all of these things since the court issued the scheduling order on August 14, 2018. The court will not order the defendants to set up depositions for the plaintiff.

In this same motion, the plaintiff asks the court to order the defendants' attorney to "set [him] up with an eye doctor—a specialist for another opinion on [his] eyes." Id. at 1. The court will not grant this request, either. Again, it is not the job of the defendants' attorney to arrange for the plaintiff's medical care. He knows what he needs to do if he wants a second opinion—he needs to file a request with the Health Services Unit, and explain to them what is going on with his eyes.

The next motion the plaintiff filed was a motion for default judgment. Dkt. No. 71. In this motion, the plaintiff says that he "send the wardens legislations rules for the Wis. Administrative Codes they were violating," but that the defendants retaliated against him. Id. He disagrees with the information he has gotten from the defendants' attorney about who is responsible for having the lights one. He says that Lennoye has threatened him with tickets for having a shade over the bulb in his cell, which he says is a 220-

9

watt smart bulb that is "overkill, too much light for a small space." He asks "for sanctions for the defendants' [unprecedented] actions." Id. The court will deny this motion. If the plaintiff disagrees with the defendants' version of events, he can explain that to the court in the summary judgment paperwork (the deadline for the parties to file summary judgment motions is February 18, 2019). The court will not sanction the defendants for the lights—this is the very relief the plaintiff is asking for in his lawsuit, and as the court has said repeatedly, it will decide whether he is entitled to that relief once it has reviewed the evidence from both sides (or a jury will decide that question).

The plaintiff's third motion for sanctions, default judgment and an evidentiary hearing alleges that the attorney who previously was representing the defendants instructed the defendants that they did not have to "follow legislative rules or honor filings for TRO by the plaintiff, or they did not have to tell the truth." Dkt. No. 81 at 1. The plaintiff makes these allegations without any evidence to support them; while he attached six pages of documents to the motion, none of those documents show that the lawyer told the defendants anything of the sort. Indeed, one of the documents tells the plaintiff exactly what the court has been telling him—that the defendants will not shut off the lights until the court orders them to do so, and the court has not yet ordered them to do so. Dkt. No. 81-1 at 1.

The plaintiff also alleges that someone named Allen DeGroot—who is not a defendant—committed perjury on his declaration, and the plaintiff says this calls for an evidentiary hearing. Id. Allen DeGroot is an institution complaint

examiner ("ICE") at Green Bay Correctional, and the defendants filed his declaration in support of their brief opposing the plaintiff's motion for injunctive relief. Dkt. No. 73. The plaintiff claims that several of DeGroot's statements in the declaration were "lies;" such as his statement that no kitchen workers live in the dorm. Dkt. No. 81 at 3. The plaintiff claims that there *were* kitchen workers living in the dorm at one time, or people who used to be kitchen workers live in the dorm. This doesn't mean that DeGroot's statement that no kitchen workers live there *now* is a lie. The plaintiff also disagrees with various of DeGroot's statements about when the lights to on or off. Id. at 4. The court is not deciding right now what is going on with the lights. Again—it will decide that on summary judgment, based on evidence from the parties, or a jury will decide it if the plaintiff's claims survive summary judgment.

The court will not schedule an evidentiary hearing. It already has explained that the plaintiff has not met the standard for granting injunctive relief, so there is no reason for the court to schedule a hearing on whether it should grant injunctive relief. The plaintiff claims the defendants are using the lights to harass him; the defendants say they are necessary for inmate and staff safety. This is the factual question the court will consider on summary judgment, or a jury will consider at trial.

The court also notes that if the plaintiff has *properly* asked the defendants for discovery—such as asking them to answer interrogatories, or giving them requests for admission, or asking them for documents—and the defendants have refused to respond to those requests, the plaintiff has a

remedy. He can write to the defendants and try to work through the discovery issues directly. If the defendants still refuse to comply with his requests—assuming those requests are reasonable and proper—the plaintiff can file a motion asking the court to compel the defendants to respond to his requests. Before he does this, the plaintiff should carefully review the requirements of Fed. R. Civ. P. 37 and Civil L.R. 37 of this court (which the court is providing with this order). But if the plaintiff disputes the *facts* that the defendants have provided in the discovery, the proper way to alert the court to that fact is either to file a motion for summary judgment (after the discovery deadline has expired), or to respond to any summary judgment motion the defendants may timely file.

**IV. Conclusion**

The court **DENIES** the plaintiff's motion for depositions and request for an order for medical treatment. Dkt. No. 67.

The court **DENIES** the plaintiff's for preliminary injunction/ temporary restraining order. Dkt. No. 68.

The court **DENIES** the plaintiff's "supplement" to the motion for injunctive relief. Dkt. No. 69.

The court **DENIES** the plaintiff's Motion for Order. Dkt. No. 70.

The court **DENIES** the plaintiff's Motion for Default Judgment. Dkt. No. 71.

The court **DENIES** the plaintiff's motion for an order enforcing temporary restraining order. Dkt. No. 79.

The court **DENIES** the plaintiff's motion for sanctions, second motion for default judgment and motion for hearing. Dkt. No. 81.

Dated in Milwaukee, Wisconsin, this 17th day of December, 2018.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**